1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

11 | MICHAEL SUTTER,                      ) Case No.: 1:19-cv-1044 JLT
                                         )
12 |      Plaintiff,              ) ORDER GRANTING PLAINTIFF'S APPEAL
                                         ) (DOC. 20) AND REMANDING THE ACTION
13 |   v.                               ) PURSUANT TO SENTENCE FOUR OF 42 U.S.C.
                                         ) § 405(g)
14 | ANDREW SAUL,                         )
     Commissioner of Social Security,    ) ORDER DIRECTING ENTRY OF JUDGMENT IN
15 |                                      ) FAVOR OF MICHAEL SUTTER, AND AGAINST
         Defendant.            ) DEFENDANT ANDREW SAUL, THE
16 | _____) COMMISSIONER OF SOCIAL SECURITY

17       Michael Sutter asserts he is entitled to disability insurance benefits and a period of disability

18 under Title II of the Social Security Act.  Plaintiff argues the administrative law judge was erred in

19 evaluating the medical record and credibility.  For the reasons set forth below, the matter is

20 **REMANDED** for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

21 <u>**BACKGROUND**</u>

22       In August 2014, Plaintiff filed an application for benefits, asserting disability due to

23 neuropathy and a broken hip beginning January 15, 2014.  (*See* Doc. 10-5 at 2)  The Social Security

24 Administration denied the application at the initial level and upon reconsideration.  (*See id.* at 2-24)

25 Plaintiff requested an administrative hearing on the application and testified before an ALJ on

26 November 16, 2015.  (*See generally* Doc. 10-4)  The ALJ found Plaintiff was not disabled and issued

27 an order denying benefits on January 26, 2016.  (Doc. 10-5 at 28-38).  Plaintiff requested review by

28 the Appeals Council, which granted the request on March 3, 2017.  (*Id.* at 44-47)

The Appeals Council noted that "[n]ew and material evidence was submitted with the request for review," including "statements from four treating physicians… all indicating that the claimant has been unable to perform even sedentary work since October 2012." (Doc. 10-5 at 44)  In addition, the ALJ found the ALJ erred in rejecting the opinion of a physician's assistant. (*Id*.)  Therefore, the Appeals Council remanded the matter for additional proceedings, including review of the medical record and Plaintiff's "maximum residual functional capacity during the entire period." (*Id.* at 44-45)

Plaintiff testified at a second hearing before the ALJ on June 14, 2017. (*See* Doc. 10-3 at 77-102)  The ALJ again found Plaintiff was disabled and issued a decision on November 2, 2017. (Doc. 10-5 at 48-65)  Plaintiff requested review of the second decision by the Appeals Council, which granted his request. (*Id.* at 72)  The Appeals Council found "there [was] an unadjudicated period in the current decision from January 1, 2016, through November 7, 2017." (*Id.*)  In addition, the Appeals Council found the ALJ failed to provide "an adequate evaluation" of a treating physician's decision. (*Id.*)  Because the matter was twice adjudicated by the same ALJ, the Appeals Council directed that "the case be assigned to another Administrative Law Judge." (*Id.* at 73)  Upon remand, the new ALJ was directed to further consider the medical opinion evidence; Plaintiff's residual functional capacity; and "obtain evidence from a vocational expert," if the expanded record required additional evidence. (*Id.*)

On October 4, 2018, Plaintiff testified before a different ALJ. (*See* Doc. 10-3 at 26)  The ALJ found Plaintiff was not disabled and issued an order denying the application on November 19, 2018. (*Id.* at 26-37)  Plaintiff requested review of the ALJ's decision with the Appeals Council, which denied the request on May 25, 2019. (*Id.* at 2-5)  Therefore, the ALJ's determination became the final decision of the Commissioner of Social Security.

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act.  When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g).  The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence.  *See Sanchez v. Sec'y of*

2

1   *Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).  Substantial evidence is "more than a mere

2   scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a

3   conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*,

4   305 U.S. 197 (1938)).  The record as a whole must be considered, because "[t]he court must consider

5   both evidence that supports and evidence that detracts from the ALJ's conclusion."  *Jones v. Heckler*,

6   760 F.2d 993, 995 (9th Cir. 1985).

7   **DISABILITY BENEFITS**

8      To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to

9   engage in substantial gainful activity due to a medically determinable physical or mental impairment

10  that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C.

11  § 1382c(a)(3)(A).  An individual shall be considered to have a disability only if:

12  > his physical or mental impairment or impairments are of such severity that he is not only
13  > unable to do his previous work, but cannot, considering his age, education, and work
        experience, engage in any other kind of substantial gainful work which exists in the
14  > national economy, regardless of whether such work exists in the immediate area in
        which he lives, or whether a specific job vacancy exists for him, or whether he would be
15  > hired if he applied for work.

16  42 U.S.C. § 1382c(a)(3)(B).  The burden of proof is on a claimant to establish disability.  *Terry v.*

17  *Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).  If a claimant establishes a prima facie case of disability,

18  the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial

19  gainful employment.  *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

20  **ADMINISTRATIVE DETERMINATION**

21     To achieve uniform decisions, the Commissioner established a sequential five-step process for

22  evaluating a claimant's alleged disability.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The process

23  requires the ALJ to determine whether Plaintiff (1) is engaged substantial gainful activity, (2) had

24  medically determinable severe impairments (3) that met or equaled one of the listed impairments set

25  forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional

26  capacity to perform to past relevant work or (5) the ability to perform other work existing in significant

27  numbers at the state and national level.  *Id.* The ALJ must consider testimonial and objective medical

28  evidence. 20 C.F.R. §§ 404.1527, 416.927.

As an initial matter, the ALJ found Plaintiff met "the insured status requirements of the Social Security Act through December 31, 2018." (Doc. 10-3 at 29)  Pursuant to the five-step process, the ALJ first determined Plaintiff had "not engaged in substantial gainful activity since January 15, 2014, the alleged onset date," because his earnings in 2015, 2016, and 2017 "did not rise to the level of substantial gainful activity." (*Id.*)  Second, the ALJ found Plaintiff's severe impairments included: "poly-neuropathy, history of hip fracture with pinning in 2015 and history of Lyme disease." (*Id.*)  At step three, the ALJ determined Plaintiff's impairments did not meet or medically equal a Listing. (*Id.* at 29-30)  Next, the ALJ found:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except lift 11-20 pounds frequently and carry 11-20 pounds occasionally; frequently reach overhead with the bilateral hands; frequently reach all other [directions] with the bilateral hand; frequently handle, finger and feel; frequently push/pull with the bilateral hands; frequent operation of foot controls with the bilateral feet; never climb ladders, ropes or scaffolds; frequently climb stairs and ramps; occasionally balance; frequently stoop, kneel, crouch and crawl; no exposure to unprotected heights; frequent exposure to moving mechanical parts, operating motor vehicle, humidity and wetness, and vibrations; continuous exposure to dust, odors, fumes, and pulmonary irritants, extreme cold, extreme heat; ability to tolerate very loud noise such as a jackhammer; and ability to sort and use paper files.

(*Id.* at 30)  With this residual functional capacity, the ALJ determined at step four that Plaintiff "was capable of performing past relevant work as a land surveyor and consultant." (*Id.* at 36)  Thus, the ALJ concluded Plaintiff was "not… under a disability, as defined by the Social Security Act, from January 15, 2014, through the date of [the] decision." (*Id.*)

## DISCUSSION AND ANALYSIS

Plaintiff argues the ALJ erred in evaluating the medical evidence, including the opinion of his treating physicians. (Doc. 20 at 7-17)  Plaintiff also asserts the ALJ erred in evaluating the credibility of his subjective complaints. (*Id.* at 17-22)  On the other hand, the Commissioner asserts the "final decision should be affirmed because it is supported by substantial evidence and legally proper." (Doc. 22 at 12)  Specifically, the Commissioner argues that "[t]he ALJ properly weighed the medical-opinion evidence" and Plaintiff's subjective complaints. (*Id.* at 5, 9) (emphasis omitted)

## A.    Evaluation of Plaintiff's Subjective Statements

Plaintiff testified at an administrative hearing on October 4, 2018. (Doc. 10-3 at 48)  He reported he was boring in 1957 and was 60 years old. (*Id.* at 56) Plaintiff said had recently moved to

California from Arizona, and he lived with his wife; their children, who were 4 years old and 2 years old; and his mother-in-law.  (*Id.* at 55-56)  He reported that he had most recently worked part-time "doing consulting work for engineers" in March 2017.  (*Id.* at 57-58, 60)

He believed he "could not perform the work anymore" due to polyneuropathy and "severe pain" in his right hip, which was pinned following a fracture in 2006.  (Doc. 10-3 at 60, 67)  He said he also was diagnosed with fibromyalgia and had a history of Lyme Disease.  (*Id.* at 68)  He reported the work he last performed "was only sedentary," and it involved "calculating construction drawings" or "drawing maps on a computer."  (*Id.* at 60, 65)  Plaintiff stated he could no longer use his hands to draw maps and he was unable to "sit for hours anymore."  (*Id.* at 59)  In addition, Plaintiff he explained the work program he was proficient in was "pretty much obsolete" and he "tried as hard as [he] could" to learn the "newer, much more complicated" version of the program but was unable to do so.  (*Id.* at 66)

Plaintiff estimated that he could lift and carry ten pounds with his right hand, fifteen pounds with his left hand, and twenty pounds if using his hands together.  (Doc. 10-3 at 66)  He stated he could sit "about an hour" at one time before he needed move, stand about twenty minutes at one time, and walk 100 yards before he needed to stop.  (*Id.*)  Plaintiff said he sometimes had "fibro fog," and had not received any psychological treatment.  (*Id.* at 68)

### 1.    Standards for reviewing a claimant's statements

In evaluating a claimant's statements regarding the severity of his symptoms, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if there is no evidence of malingering, the ALJ must make specific findings as to credibility by setting forth clear and convincing reasons for rejecting a claimant's subjective complaints.  *Id.* at 1036.

If there is objective medical evidence of an impairment, an ALJ may not discredit a claimant's testimony as to the severity of symptoms merely because it is unsupported by objective medical evidence. *See Bunnell v. Sullivan*, 947 F.2d 341, 347-48 (9th Cir. 1991). The Ninth Circuit explained:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof. Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom. By requiring that the medical impairment "could reasonably be expected to produce"

5

pain or another symptom, the *Cotton* test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

*Smolen v. Chater* 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in *Cotton*, 799 F.2d 1403).  Further, an ALJ is directed to identify "specific reasons for the weight given to the individual's symptoms," in a manner such that the claimant "and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."  Social Security Ruling[1] 16-3p, 2017 WL 5180304 (2017); *see also Moisa v. Barnhart,* 367 F.3d 882, 885 (9th Cir. 2004) (findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony").

An ALJ may consider additional factors to assess a claimant's statements including, for example: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct, (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment, and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of reported by a claimant.  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (an ALJ may consider a claimant's reputation for truthfulness, inconsistencies between a claimant's testimony and conduct, and a claimant's daily activities).

2.      The ALJ's analysis of Plaintiff's statements

Addressing Plaintiff's statements regarding his impairments and the severity of his symptoms, the ALJ stated:

> The claimant alleged disability due to neuropathy and a broken hip.  Side effects reported due to medication included sleepiness and a rash.  The claimant stated that his impairments affected his ability to lift, squat, bend, stand, reach, walk, sit, knee, stair climb, complete tasks, concentrate, and use his hands.  He stated that he could walk a few blocks around the neighborhood before needing to stop and rest.  The claimant reported that he could pay attention for 30 minutes, did not finish what he started, but followed spoken and written instructions well outside of physical limitations.  Further, he had a little difficulty handling stress or changes in routine well. (Exhibits 2E; 6E; 8E; 10E)

After careful consideration of the evidence, the undersigned finds that the claimant's

---

[1] Social Security Rulings (SSRs) are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner. 20 C.F.R. § 402.35(b)(1). The Ninth Circuit gives the Rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989).

medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(Doc. 10-3 at 30-31)  The ALJ then summarized the medical record related to Plaintiff's impairments in chronological order.  (*See id.* at 31-33)

Plaintiff argues that the ALJ "failed to provide clear and convincing reasons for finding Plaintiff's subjective allegations concerning the limitations arising from his … impairments not fully credible."  (Doc. 20 at 22)  On the other hand, the Commissioner argues that provided specific and legitimate reasons explaining his analysis and identified substantial evidence supporting his findings."  (Doc. 21 at 9)

a.  The medical record

As an initial matter, "summariz[ing] the medical evidence supporting [the] RFC determination... is not the sort of explanation or the kind of 'specific reasons' [the Court] must have in order to ... ensure that the claimant's testimony was not arbitrarily discredited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015).

The ALJ offered boilerplate findings related to whether Plaintiff's medically determinable impairments could cause the symptoms alleged and that her statements were "not entirely consistent with the medical evidence and other evidence in the record."  (Doc. 9-3 at 22)  The ALJ then followed the assessment with a chronological summary of the record, including objective findings and Plaintiff's subjective reports to her physicians.  (*Id.* at 22-25)  However, the ALJ did not link Plaintiff's testimony to this summary of the record, such as by identifying any inconsistent statements between her reports to physicians and her testimony at the hearing.  Previously, this Court determined that unless the ALJ links the claimant's testimony to "the observations an ALJ makes as part of the summary of the medical record [this is] not sufficient to establish clear and convincing reasons for rejecting a Plaintiff's credibility." *Argueta v. Colvin*, 2016 U.S. Dist. LEXIS 102007 at *44 (E.D. Cal. Aug. 3, 2016).

Importantly, a district court may not review an ALJ's summary of the record to identify inconsistencies between a claimant's testimony and the record.  In *Brown-Hunter*, the claimant argued the ALJ failed to provide clear and convincing reasons for rejecting her symptom testimony.  *Id.*, 806 F.

7

3d at 491. The district court identified inconsistencies in the ALJ's summary of the medical record that it opined gave rise to reasonable inferences about Plaintiff's credibility. *Id.* On appeal, the Ninth Circuit determined the ALJ failed to identify the testimony she found not credible and did not link that testimony to support the adverse credibility determination. *Id.* at 493. The Court explained that even if the district court's analysis was sound, the analysis could not cure the ALJ's failure. *Id.* at 494.

Recently, the Ninth Circuit determined an ALJ erred when discrediting symptom testimony as "not entirely consistent with the medical evidence," without linking the testimony and medical evidence. *Holcomb v. Saul*, 2020 U.S. App. LEXIS 40433 at *2-3 (9th Cir. Dec. 28, 2020). The Court observed that while the ALJ summarized the claimant's testimony and "determined that his symptom testimony was not 'entirely consistent with the medical evidence and other evidence in the record.'" *Id.* at *2. The Court observed that "the ALJ discussed relevant medical evidence but failed to Holcomb's symptom testimony to specific medical records and explain why those medical records contradicted his symptom testimony." *Id.* Further, the Court observed that "the ALJ never mentioned Holcomb's symptom testimony while discussing the relevant medical evidence." *Id.* Because the Court is constrained to the reviewing reasoning identified by the ALJ for discounting testimony, the Court found the "failure to specific the reasons for discrediting Holcomb's symptom testimony was reversible error." *Id.* (citing *Brown-Hunter*, 806 F.3d at 494)

Likewise, here, the ALJ offered little more than a summary of the medical evidence, and he did not identify the statements from Plaintiff that the ALJ believed conflicted with this record. Although the ALJ also asserted Plaintiff's "physical and diagnostic findings during the relevant period show essentially mild to benign findings," the ALJ erred by not identifying any specific objective medical findings in the record that support this conclusion or conflict with Plaintiff's testimony. *See Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (an ALJ "must identify what… evidence undermines the claimant's complaints"). Because the ALJ failed to link the medical record to Plaintiff's testimony, the ALJ failed to reject limitations to which Plaintiff testified—including difficulties with sitting, standing, and walking— and the Court is unable to cure the error. *See Brown-Hunter*, 806 F. 3d at 494; *Holcomb*, 2020 U.S. App. LEXIS 40433 at *2-3; *see also Coloma v. Comm'r of Soc. Sec.*, 2018 WL 5794517 at *9 (E.D. Cal. Nov. 2, 2018) (finding error where " the ALJ simply cites to medical evidence

and the general adequacy of Plaintiff's functioning, without any link to how they conflict with, or undermine, Plaintiff's statements").  Thus, the summary of the medical record does not support the ALJ's adverse credibility determination.

> b.    *Treatment received*

In assessing a claimant's statements regarding the severity of his symptoms, the ALJ may consider "the type, dosage, effectiveness, and side effects of any medication."  20 C.F.R. § 404.1529(c)(iv).  Further, the Ninth Circuit determined that an "ALJ is permitted to consider lack of treatment in his credibility determination." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (finding the ALJ's consideration of the claimant's failure to seek treatment for a three or four month period was "powerful evidence"); *see also Meanel v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (the ALJ properly considered the physician's failure to prescribe, and the claimant's failure to request, medical treatment commensurate with the "supposedly excruciating pain" alleged).

The ALJ noted Plaintiff's "most significant impairments included poly-neuropathy, history of hip fracture with pinning in 2005, fibromyalgia and history of Lyme disease."  (Doc. 10-3 at 33) The ALJ determined "the evidence of record shows that the symptomology due to these impairments were reduced to manageable levels with treatment during the relevant period, including mainly conservative treatment."  (*Id.*)

Plaintiff contends the ALJ erred in characterizing his treatment as "mostly conservative" because he "has tried narcotic pain medication, all the medications indicated for fibromyalgia, acupuncture, TENS unit, biofeedback, physical therapy, anti-depressants, trigger point injections, exercise and bed rest."  (Doc. 20 at 21, citing AR 717, 679 [Doc. 10-14 at 51; Doc. 10-16 at 20]) In addition, Plaintiff notes that he "attempted every treatment option and modality available to him." (*Id.*) He argues that even if the Court were to determine the treatment was conservative, "the fact that treatment may be routine or conservative is not a basis for finding subjective symptom testimony unreliable absent discussion of the additional, more aggressive treatment options the ALJ believes are available." (Doc. 20 at 21, quoting *Block v. Berryhill*, No. 2:16-cv-2230-EFB, 2018 WL 1567814 (E.D. Cal. Mar. 31, 2018), *citing Moon v. Colvin*, 139 F. Supp. 3d 1211, 1220 (D. Or. 2015)). Finally, Plaintiff contends the ALJ erred because he "provided no citation or evidence from the record to

support this finding." (*Id.* at 22, citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009))

The Commissioner argues that the ALJ "properly found that Plaintiff's treatment undermined Plaintiff's allegations of disabling limitations." (Doc. 22 at 10)  The Commissioner notes an "ALJ is permitted to consider lack of treatment in his credibility determination." (*Id.*, citing *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); 20 C.F.R. § 404.1529(c)(3)(iv)).  Here the Commissioner observes that "there was a ten-month period wherein Plaintiff alleged chronic pain so extreme as to render him disabled, yet he neither took medication nor consulted pain specialists." (*Id.*, citing AR 630, 709, 713, 895 [Doc. 10-14 at 2; Doc. 10-16 at 13, 17; Doc. 10-19 at 31])

Notably, as Plaintiff observes, the ALJ did not cite any evidence in the record to support his conclusions that Plaintiff's symptoms "were reduced to management levels" or "mainly conservative treatment." (*See* Doc. 10-3 at 33)  The Ninth Circuit explained an ALJ "must identify what… evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).  The ALJ failed to carry this burden or identify any more aggressive treatment that was available for Plaintiff's impairments.  Because the ALJ failed to identify evidence in the record to support these conclusions, this factor does not support the adverse credibility determination.  *See Calleres v. Comm'r of Soc. Sec.*, 2020 WL 4042904 at *5 (E.D. Cal. July 17, 2020) (concluding the claimant's treatment was not a clear and convincing reason for discounting the claimant's testimony where the ALJ did not identify any additional "treatment that is available for such impairments, especially fibromyalgia, that the [claimant] did not use")*; Candice C. v Saul*, 2019 WL 5865610 at *4 (C.D. Cal. Nov. 8, 2019) (concluding the ALJ erred where he "failed to explain why [the treatment] is routine or conservative or what more aggressive treatment was available and appropriate for Plaintiff"); *Taylor v. Colvin*, 2013 WL 6478414 at *3 (C.D. Cal. Dec. 3, 2013) (finding "the ALJ failed to adequately explain [the] reason" where "he ALJ failed to cite to specific evidence of plaintiff's conservative treatment).

Moreover, courts have questioned whether injections, such as those Plaintiff received, are not conservative treatment.  *See, e.g., Garrison v. Colvin*, 759 F.3d 995, 1015 n. 20 (9th Cir. 2014) (expressing "doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment"); *Oldham v. Astrue*, 2010 WL 2850770, at *9 (C.D. Cal. 2010) (noting that injections are "performed in operation-like settings" and finding they are not a form of conservative

treatment); *Tagle v. Astrue*, 2012 WL 4364242 at *4 (C.D. Cal. Sept. 21, 2012) ("While physical therapy and pain medication are conservative, epidural and trigger point injections are not"); *Duarte v. Saul*, 2020 WL 5257597 at *9 (E.D. Cal. Sept. 3, 2020) ("injections, by themselves, do not constitute conservative treatment").  Thus, it is not clear from the record that Plaintiff's treatment should have been characterized conservative.

Finally, while the Commissioner contends the ALJ considered a "lack of treatment" and that Plaintiff had a gap in his treatment (Doc. 22 at 10), the ALJ did not identify lack of treatment in his analysis of Plaintiff's statements concerning his symptoms.  (*See* Doc. 10-3 at 31, 33)  The Court is constrained to review only the reasons identified by the ALJ, and cannot consider post-hoc reasoning provided by the Commissioner. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003) (noting a reviewing court is "constrained to review the reasons the ALJ asserts").  Because the ALJ did not identify failure to seek treatment—or a lack of treatment—as a reason to discount Plaintiff's subjective complaints, the Court is unable to consider this reason identified by the Commissioner.  *See id.*; *see also Vera v. Colvin*, 2015 WL 7271750 at *7 n.6 (E.D. Cal. Nov. 18, 2015) ("the court declines to consider the Commissioner's additional reason in support of the ALJ's determination").

> ### c.    Work history

In support of the adverse credibility determination, the ALJ observed that Plaintiff "even engaged in work during the alleged period of disability."  (Doc. 10-3 at 33) Previously, the ALJ noted the work Plaintiff engaged in during the relevant period was part-time and did not rise to the level of substantial gainful activity.  (*See id.* at 29)

"Evidence of a poor work history that suggests a claimant is not motivated to work is a proper reason to discredit a claimant's testimony that he is unable to work."  *Franz v. Colvin*, 91 F.Supp.3d 1200, 1209 (D. Or. 2015) (citing *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002)); *see also Albidrez v. Astrue*, 504 F.Supp.2d 814, 822 (C.D. Cal. 2007) ("[a]n ALJ may properly consider a claimant's poor or nonexistent work history in making a negative credibility determination").  Notably, however, the ALJ did not make any finding that Plaintiff had a poor work history.  Moreover, it is unclear how Plaintiff's candor over part-time work—that was so limited as to not rise to the level of substantial gainful activity—undermines the credibility of his assertion that he is no longer able to work

due his level of pain and anxiety. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007) (a claimant's work history does not support an adverse credibility determination if the claimant "experience[d] pain and limitations severe enough to preclude him from maintaining substantial gainful employment").  Because the ALJ did not make any findings regarding Plaintiff's work history, or explain how Plaintiff's work history undermined his credibility, this factor does not support the adverse credibility determination.  *See Bray v. Comm'r*, 554 F.3d 1219, 1229 (9th Cir. 2009) (the Court cannot engage in "post hoc rationalizations that attempt to intuit what the [ALJ] might have been thinking").

### d.    Failure to identify the testimony being discounted

Finally, the ALJ must identify what testimony is not credible.  *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). "General findings," such as the ALJ provided here, "are insufficient." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (citations omitted).  The Ninth Circuit requires an ALJ to "*specifically identify what testimony is credible* and what evidence undermines the claimant's complaints." *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (emphasis added); *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (an ALJ "must state which pain testimony is not credible and what evidence suggests the complaints are not credible"); *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) ("The ALJ must provide 'clear and convincing' reasons to reject a claimant's subjective testimony, by specifically identifying what testimony is not credible and what evidence undermines the claimant's complaints").

The ALJ did not identify the statements from Plaintiff that the ALJ believed conflicted with this record.  Indeed, the ALJ did not summarize—or even mention—Plaintiff's hearing testimony, and instead the ALJ referred only to statements made in Exhibits 2E, 6E, 8E, and 10E.  (*See* Doc. 10-3 at 31)  Significantly, however, the Function Report in Exhibit 8E was completed by Plaintiff's wife, who indicated that the responses to the questions were "based on [her] observations of Michael Sutter and/or his dictated answers."  (Doc. 10-12 at 51, emphasis omitted).  Review of the form makes it unclear the extent to which the information came from Plaintiff, or which answers were dictated.  (*See* Doc. 10-12 at 43-51)  Similarly, Exhibits 6E and 10E were completed by Plaintiff's counsel when appealing the decisions of the administration prior to the hearing level, and included little information regarding Plaintiff's functional limitations.  (Doc. 10-12 at 32, 54-55)  Although Plaintiff completed

his own Pain Questionnaire in 2014, the ALJ did not discuss the form or Plaintiff's statements therein related to his functional limitations.  (*See* Doc. 10-3 at 30-31; *see also* Doc. 10-12 at 23-25).  In the questionnaire, Plaintiff indicated he was "constantly at a level 8 out of 10 pain," and he could walk 1-2 blocks occasionally, stand 5-10 minutes at one time, and sit for 30 minutes at one time. (*See* Doc. 10-12 at 23-25).

Because the ALJ did not carry the burden to specifically address Plaintiff's hearing testimony regarding his functional limitations—or the pain questionnaire including similar statements—and the ALJ also failed to identify the statements that he believed were not credible.  Thus, the ALJ failed to properly set forth findings "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds."  *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004); *see also Thomas*, 278 F.3d at 958.

## B.  Evaluation of the Medical Evidence

In this circuit, the courts distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant.  *Lester*, 81 F.3d at 830.  In general, the opinion of a treating physician is afforded the greatest weight.  *Id.*; *see* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Further, an examining physician's opinion is given more weight than the opinion of non-examining physician.  *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

An opinion is not binding upon the ALJ and may be discounted whether another physician contradicts the opinion.  *Magallanes*, 881 F.2d at 751.  An ALJ may reject an *uncontradicted* opinion of a treating or examining medical physician only by identifying a "clear and convincing" reason.  *Lester*, 81 F.3d at 831.  In contrast, a *contradicted* opinion of a treating or examining physician may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record."  *Id.*, 81 F.3d at 830.  When there is conflicting evidence, "it is the ALJ's role to determine credibility and to resolve the conflict."  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  The Court must uphold the ALJ's resolution of the conflict when there is "more than one rational interpretation of the evidence." *Id.*; *see also Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The trier of fact and

not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ").

Plaintiff asserts the ALJ erred in rejecting limitations identified by his treating physicians, Drs. Colin Kerr and Glorietta Fonte. (Doc. 20 at 7-17) Because these opinions were contradicted by the state agency medical consultants and consultative examiners (*see* Doc. 10-3 at 34), the ALJ was required to identify clear and convincing reasons for rejecting the treating physician's opinions. *See Lester*, 81 F.3d at 831.

### 1.   Opinions of Dr. Colin Kerr

Dr. Kerr became "the primary care physician" for Plaintiff in December 2017. (Doc. 10-17 at 94) Dr. Kerr noted he "requested and reviewed [Plaintiff's] past medical records had… [did] a complete physical exam." (*Id.*) He noted Plaintiff had been diagnosed with: "chronic polyarthritis due to Lyme disease, fibromyalgia …, and chronic painful peripheral neuropathy causes sensory pain in his skin all over his body as well as chronic hypertension. (*Id.*) According to Dr. Kerr, Plaintiff exhibited "diffuse tenderness to palpation over his neck, shoulders, back, and all 4 extremities" "pain on range of motion testing in his left elbow and both hips and right knee." (*Id.*)

Dr. Kerr indicated Plaintiff's medication included hydrocodone "four times a day to control his pain," tizanidine as a muscle relaxant, and losartan-hydrochlorothiazide for his hypertension. (Doc. 10-17 at 94) He believed Plaintiff's condition "appear[ed] to be static and… no longer progressing." (*Id.* at 95)

According to Dr. Kerr, Plaintiff could not "lift anything greater than 10 lbs. because it [would] aggravate his pain and fatigue." (Doc. 10-17 at 94) He noted Plaintiff reported that after twenty minutes of physical exertion, his pain "markedly increased" to the extent he needed "to stop and rest for an hour or more." (*Id.*) Dr. Kerr believed Plaintiff "might possibly be able to perform a part-time job sitting only for up to 2 hours at a time for one session in the morning and another in the afternoon." (*Id.*; *see also id.* at 95)

#### a.   The ALJ's evaluation of the opinions

Addressing the medical evidence, the ALJ indicated the opinion of Dr. Kerr was "assigned little weight because it appears based mainly on the claimant's subjective statements and is generally

1  inconsistent with the medical evidence of record as a whole." (Doc. 10-3 at 35) In addition, the ALJ
2  noted Dr. Kerr "acknowledged a short treatment relationship with the claimant." (*Id.*)

3       Plaintiff argues that the ALJ failed "to provide legally sufficient reasoning" when rejecting the
4  limitations identified by Dr. Kerr. (Doc. 20 at 7, emphasis omitted) The Commissioner asserts the
5  ALJ "properly weighed the medical-opinion evidence" and properly rejected the limitations identified
6  by Dr. Kerr. (Doc. 22 at 4, emphasis omitted)

7               *b.   Reliance upon Plaintiff's subjective complaints*

8       An ALJ may reject an opinion predicated upon "a claimant's self-reports that have been
9  properly discounted as not credible." *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see*
10 *also Fair*, 885 F.2d at 605 (finding the ALJ identified a specific, legitimate reason for disregarding a
11 medical opinion "because it was premised on Fair's own subjective complaints, which the ALJ had
12 already properly discounted.").

13      Because the ALJ failed to properly reject Plaintiff's subjective complaints or his testimony
14 regarding his physical limitations, this factor does not support the ALJ's decision to give reduced
15 weight to the opinion of Dr. Kerr.

16              *c.   Inconsistency with the medical record*

17      An ALJ may reject the opinions of a physician where the opinions are inconsistent with the
18 overall record. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 602-03 (9th Cir. 1999).
19 However, to reject an opinion as inconsistent with the physician's notes or medical record, the "ALJ
20 must do more than offer his conclusions." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). To
21 reject an opinion as contradicted by the medical record, the ALJ must "set[] out a detailed and thorough
22 summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and mak[e]
23 findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). The Ninth
24 Circuit explained: "To say that medical opinions are not supported by sufficient objective findings or
25 are contrary to the preponderant conclusions mandated by the objective findings does not achieve the
26 level of specificity our prior cases have required." *Embrey*, 849 F.2d at 421-22.

27      The ALJ found the functional assessment by Dr. Kerr was "generally inconsistent with the
28 medical evidence of record as a whole." (Doc. 10-17 at 94) However, the ALJ did not identify any

evidence that he believed was inconsistent with the limitations identified by Dr. Kerr.  For example, Dr. Kerr opined Plaintiff could not "lift anything greater than 10 lbs.," and could only sit for work "for up to 2 hours at a time."  (*Id.*)  The ALJ has not identified any objective findings, diagnostic tests, or treatment records that are inconsistent with these limitations.  Because the ALJ failed to carry the burden to identify conflicting evidence in the medical record, he erred in rejecting the limitations identified by Dr. Kerr due to inconsistencies.  *See Embrey*, 849 F.2d at 421-22.

> d.      *Length of treatment*

An ALJ may consider the length and frequency of treatment in evaluating what weight to give the opinion of a treating physician. 20 C.F.R. § 404.1527(c)(2)(i); *see also Benton v. Barnhart*, 331 F.3d 1030, 1038-39 (9th Cir. 2003) (duration of treatment relationship and frequency and nature of contact relevant in weighing opinion); *Allen v. Comm'r of Soc. Sec.*, 498 Fed. App'x 696, 697 (9th Cir. 2012) (finding a "limited treatment relationship with [the claimant] was a specific and legitimate reason to assign little weight" to the treating physician's opinion).  However, a limited treatment relationship cannot alone support the rejection of a treating physician's opinion. *Rodriguez v. Berryhill*, 2017 WL 896304 at *10 (E.D. Cal. Mar. 6, 2017); *see also Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (holding that while a limited treating relationship may be a valid reason for not giving controlling weight to the opinion of a treating physician, "it is not by itself a basis for rejecting them").  Thus, this factor alone cannot support the ALJ's decision to reject the physical functional limitations identified by Dr. Kerr in his medical statement.

Moreover, the Ninth Circuit indicated that a physician who treats a patient even only once may be considered a treating source when the physician's opinion represents both personal knowledge of a patient's condition and information communicated by other members of a treating team.  *See Benton v. Barnhart*, 331 F.3d 1030, 1039 (9th Cir. 2003).  Dr. Kerr both examined Plaintiff and was aware of his diagnosis history and findings by other physicians.  (*See* Doc. 10-17 at 94 [noting Dr. Kerr "requested and reviewed his past medical records and … [performed] a complete physical exam] and the diagnosis of fibromyalgia had been confirmed by a neurologist examination]).  Consequently, Dr. Kerr's opinions were entitled to the weight of a treating physician, and the ALJ erred in rejecting the opinions due to the length of the treatment relationship.

2.      Opinions of Dr. Glorietta Fonte

Dr. Fonte noted she became Plaintiff's primary care provider at Athena Medical Group in February 2016 following the departure of another physician from the practice.  (Doc. 10-16 at 2)  According to Dr. Fonte, she reviewed Plaintiff's file, discussed his concerns, and "proceeded to work with him on referrals to any and all specialists that may be able to better diagnose and assist with treating his chronic pain condition."  (*Id.*)  She noted Dr. Howard Rosen ran blood tests and diagnosed Plaintiff with Lyme Disease, while Dr. Dale Helman diagnosed Plaintiff with polyneuropathy following an electromyogram.  (*Id.*)  Dr. Fonte noted that at that time, Plaintiff's "only option [was] to continue with the medication [she] was currently prescribing, which [did] little to reduce his constant and severe pain."  (*Id.* at 3)  Dr. Fonte opined Plaintiff was "disabled and cannot return to any form of work, sedentary or otherwise."  (*Id.*)

In June 2016, Dr. Fonte and Andrea Grayson NP completed a questionnaire.  (Doc. 10-16 at 5)  Dr. Fonte noted Plaintiff's diagnoses were based upon positive Lyme titer test, multiple tender points, and "Plaintiff's subjective report of pain [was] secondary supportive data."  (*Id.*)  She believed Plaintiff was able to lift and carry "[a]bout 10 lbs roughly" for "2-3 hours over an 8 hour day."  (*Id.*)  Dr. Fonte opined that Plaintiff could sit for two hours at one time, or four hours total in an eight-hour day; and Plaintiff could stand and/or walk two hours at one time or four hours over an eight-hour day.  (*Id.*)

a.      The ALJ's evaluation of the opinions

Addressing the medical evidence, the ALJ indicated the opinion of Dr. Fonte was given "little to no weight."  (Doc. 10-3 at 35).  The ALJ explained:

> [S]he stated that Mr. Sutter is "disabled and cannot return to any form of work." (Exhibit 10F/4)  The undersigned gives little to no weight to this opinion.  First, the statement that the claimant is "disabled" is not a medical opinion, but rather an administrative finding dispositive of a case.  These issues are reserved to the Commissioner, and as such, are not entitled to any special significant weight (20 CFR 404.1527[e](1)(3) and CFR 404.1427(d)(1)).  Second, Dr. Fonte's opinion is less well supported by the longitudinal medical record because her rationale appears based on her review of the file and subjective complaints.  (Exhibit 10F/4)  The record does not clearly explain if she, or the nurse practitioner, who had a more frequent treating relationship with the claimant, physically examined him.  Their treatment notes show that he was seen primarily for follow up visits and medication refills.  (Exhibit 14F)  Third, the limitations she described are more restrictive than other medical opinions in the record.  Thus, this opinion has little to no weight.

(Doc. 10-3 at 35)

17

Plaintiff argues that the ALJ failed "to provide legally sufficient reasoning" when rejecting the limitations identified by Dr. Fonte. (Doc. 20 at 12, emphasis omitted)  The Commissioner asserts the ALJ "provided specific and legitimate reasons" for giving less weigh to the opinion of Dr. Fonte and adopting the opinion of another physician. (Doc. 22 at 5)

### b.  Ultimate issue

A physician's opinion on the ultimate issue of disability is not entitled to controlling weight, because statements "by a medical source that [a claimant] is 'disabled' or 'unable to work'" "are not medical opinions" under the Regulations. 20 C.F.R. §§ 404.1527(e), 416.927(e).  Rather, an ALJ "is precluded from giving any special significance to the source; e.g., giving a treating source's opinion controlling weight" when it is on an issue reserved to the Commissioner, such as the ultimate issue of disability. Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *3, (July 2, 1996); *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) ("[t]he law reserves the disability determination to the Commissioner"); *Martinez v. Astrue*, 261 Fed. App'x 33, 35 (9th Cir. 2007) ("the opinion that [a claimant] is unable to work is not a medical opinion, but is an opinion about an issue reserved to the Commissioner. It is therefore not accorded the weight of a medical opinion").

Significantly, only the *conclusion* that Plaintiff is "disabled and cannot return to any form of work" may be rejected as an issue reserved for the Commissioner.  This is not a specific, legitimate reason for rejecting the physical limitations identified by Dr. Fonte.  As this Court previously explained, "*To be very clear*, rejecting the ultimate conclusion concerning disability and rejecting findings concerning work-related limitations are two vastly different propositions that should not be conflated." *Neves v. Comm'r of Social Security*, 2017 WL 1079754 at *6 (E.D. Cal. Mar. 21, 2017) (emphasis in original).

### c.  Treatment relationship

The ALJ indicated "[t]he record does not clearly explain if [Dr. Fonte], or the nurse practitioner, who had a more frequent treating relationship with the claimant, physically examined him...." (Doc. 10-3 at 35, citing Exh. 14F [Doc. 10-17 at 2-93])  Significantly, the medical record does not support the ALJ's assertion, because it is clear that Dr. Fonte saw Plaintiff after she became his primary care physician, both before and after she completed the questionnaire. (*See* Doc. 10-17 at 54, 59-61, 67)

For example, Dr. Fonte was listed as the provider for Plaintiff's visit in May 2016 for Lyme Disease, Chronic Pain Syndrome, and fibromyalgia.  (*See id.* at 67)

Further, to the extent the ALJ seeks to reject the limitations identified by Dr. Fonte due to a short treatment relationship or suggests the opinions should not be given the weight of a treating physician, the Ninth Circuit rejected such grounds.  As explained above, a physician who treats a patient even only once may be considered a treating source if the physician is part of a treating team and the statement demonstrates both personal knowledge of a patient's condition and information communicated by other physicians.  *See Benton*, 331 F.3d at 1039.

In her statement, Dr. Fonte notes that she reviewed Plaintiff's file, discussed his concerns, and "proceeded to work with him on referrals to any and all specialists that may be able to better diagnose and assist with treating his chronic pain condition."  (Doc. 10-16 at 2) In addition, Dr. Fonte noted that Dr. Rosen performed blood tests to diagnose Plaintiff with Lyme Disease and Dr. Helman diagnosed Plaintiff with polyneuropathy after an electromyogram.  (*Id.*)  Thus, the record shows that Dr. Fonte was aware of information from other physicians, and she had personal knowledge of Plaintiff's condition from his visit in May 2016.  (*See id.*; Doc. 10-17 at 67) As a result, her opinions were entitled to the weight of a treating physician.

### d.     Treatment received

The ALJ noted that Dr. Fonte's "treatment notes show that [Plaintiff] was seen primarily for follow up visits and medication refills."  (Doc. 10-3 at 35)  With this observation, it appears the ALJ rejected the functional limitations identified by Dr. Fonte, in part, due to the level of treatment received from the treating team at Athena Medical Group.

Previously, this Court determined, "A conservative course of treatment relative to a finding of total disability is a proper basis for discounting the extreme restrictions reported by a treating physician." *Nicola v. Astrue*, 2010 U.S. Dist. LEXIS 42099, at *22 (E.D. Cal. April 29, 2010) (citing *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ may reject opinion of treating physician who prescribed conservative treatment yet opined that claimant was disabled).  However, Dr. Fonte noted that Plaintiff's "only option [was] to continue with the medication [she] was currently prescribing, which [did] little to reduce his constant and severe pain."  (Doc. 10-16 at 3) Thus, while

Plaintiff was seen primarily for "medication refills," Dr. Fonte believed that was the "only option" for treatment.  Further, the record does not support the conclusion that the treatment Plaintiff received was conservative.

Because the ALJ failed to explain how the treatment received by Plaintiff was inconsistent with the limitations identified by Dr. Fonte, this factor does not support his decision to give "little to no weight" to the opinion of Dr. Fonte.

### e.    Subjective complaints

As explained above, an ALJ may reject an opinion predicated upon "a claimant's self-reports that have been properly discounted as not credible." *Tommasetti*, 533 F.3d at 1041; *Fair*, 885 F.2d at 605.  Because the ALJ failed to properly reject Plaintiff's subjective complaints, this factor does not support the ALJ's decision to give reduced weight to the opinion of Dr. Fonte.

### f.    Inconsistency with record

The ALJ opined "the limitations [Dr. Fonte] described are more restrictive than other medical opinions in the record." (Doc. 10-3 at 35)  However, the ALJ failed to explain how the limitations identified by Dr. Fonte are more restrictive than other medical opinions, or address this conflict.  (*Id.*)  Without more, the ALJ failed to meet the level of specificity required by the Ninth Circuit to reject a treating physician's opinion as conflicting with other medical opinions.  *See Embrey*, 849 F.2d at 421-22 ("it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings[;]" conclusory reasons do "not achieve the level of specificity" required to justify the rejection of an opinion); *see also Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986) (the ALJ has a burden to "set out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings"); Allen, 749 F.2d at 579 ("it is the ALJ's role to … resolve the conflict").

Because the ALJ made no effort to identify the "more restrictive" opinions— and did not address the evidence he believed conflicted with the lifting, sitting, and standing limitations identified by Dr. Fonte—this factor does not support the decision to give "little to no weight" to the opinion of Plaintiff's treating physician.

///

20

3.    Conclusion

The ALJ failed to carry the burden to identify clear and convincing reasons to reject the limitations identified by Drs. Kerr and Fonte.  Consequently, the ALJ erred in evaluating the medical record and rejecting the physical limitations identified by Plaintiff's treating physicians.

**C.    Remand is Appropriate**

The decision whether to remand a matter pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  Except in rare instances, when a court reverses an administrative agency determination, the proper course is to remand to the agency for additional investigation or explanation.  *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)).  Generally, an award of benefits is directed when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Smolen v*, 80 F.3d at 1292.  In addition, an award of benefits is directed where no useful purpose would be served by further administrative proceedings, or where the record is fully developed.  *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir. 1988).

The ALJ failed to identify legally sufficient reasons for rejecting the physical and mental limitations assessed by Plaintiff's treating physicians.  Because the ALJ failed to resolve the conflicts in the record regarding Plaintiff's limitations, the matter should be remanded for the ALJ to re-evaluate the medical evidence. *See Moisa*, 367 F.3d at 886. In addition, the matter may be remanded further proceedings where the ALJ failed to explain with sufficient specificity the basis for rejecting the claimant's testimony.  *See, e.g., Bunnell*, 947 F.2d at 348; *see also Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (remanding for further determinations where there were insufficient findings as to whether the plaintiff's testimony should be credited as true).  Thus, the Court finds remand is appropriate for an ALJ to reconsider the medical evidence, clarify the extent to which Plaintiff's testimony was rejected, and identify legally sufficient grounds to support the decision.

*///*

### CONCLUSION AND ORDER

For the reasons set for above, the Court finds the ALJ erred in evaluating the medical record and Plaintiff's subjective complaints. Consequently, the ALJ's decision cannot be upheld. *See Sanchez*, 812 F.2d at 510. Accordingly, the Court **ORDERS**:

1.    Plaintiff's appeal of the administrative decision denying benefits (Doc. 20) is **GRANTED**;

2.    The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

3.    The Clerk of Court is **DIRECTED** to enter judgment in favor of Plaintiff Michael Sutter, and against Defendant Andrew Saul, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **December 31, 2020**                    **/s/ Jennifer L. Thurston**
                                                                  UNITED STATES MAGISTRATE JUDGE

22